**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| HEATHER DIAN DECK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:22-CV-8-SNLJ |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM AND ORDER</u>

The Commissioner of the Social Security Administration denied plaintiff Heather

Deck's application for Disability Insurance Benefits under Title II of the Social Security

Act.   Plaintiff now seeks judicial review of the Administrative Law Judge's ("ALJ")

decision.   The case is fully briefed.   As explained below, the ALJ's decision is supported

by substantial evidence on the record as a whole and is affirmed.


### I.    Procedural History

Plaintiff was born in 1986.   Plaintiff filed an application for Disability Insurance

Benefits on April 8, 2020, alleging an onset of disability of April 15, 2019.   Her claim was

rejected, and she requested a hearing by an ALJ.   After the hearing, the ALJ issued an

unfavorable decision, finding that plaintiff was not disabled.   Plaintiff filed for review by

the Appeals Council, and the Appeals Council denied plaintiff's request for review.   Thus,

the ALJ's decision is the final decision of the Commissioner. Plaintiff seeks judicial review.

## II.   Disability Determination—Five Steps

Regulations define disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); *id.* § 1382c(a)(3)(A).  A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423(d)(2)(A); *id.* § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability.   20 C.F.R. §§ 404.1520(a), 416.920(a).   First, the Commissioner considers the claimant's work activity.   If the claimant is engaged in substantial gainful activity, the claimant is not disabled.   20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  "An impairment is not severe if it amounts only to a

2

slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d), 416.920(c), 416.920a(d). "The severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs." Soc. Sec. Ruling 85-28 (listing basic work activities). The claimant carries the burden to show that an impairment is severe. *Kirby*, 500 F.3d at 707–08.

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled—regardless of age, education, and work experience—and this ends the analysis. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(3)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i), 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotations omitted); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is

3

nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history. . . ." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). If the ALJ determines that the claimant retains the RFC to perform past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, then burden of production shifts to the Commissioner to show that the claimant maintains the RFC to perform other work that exists in significant numbers in the national economy. *See Bladow v. Apfel*, 205 F.3d 356, 358–59 n.5 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Though the burden of production shifts to the commissioner, the claimant keeps the burden of persuasion to prove disability. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)( v). If the claimant cannot make an adjustment to other work, then the claimant is disabled. *Id.*

### III. The ALJ's Decision

At Step One, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 15, 2019. At Step Two, the ALJ found that plaintiff has severe impairments of degenerative disc disease of the spine, morbid obesity, depression, and anxiety. [Tr. 35.] The ALJ held that plaintiff's hypertension and sleep apnea were not severe impairments. [Tr. 35.] The ALJ still considered all of plaintiff's impairments in assessing the RFC. *Id.*

At Step Three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment that is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr. 35–37.] At Step Four, the ALJ calculated plaintiff's RFC:

> [plaintiff can] perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can occasionally stoop, crouch, crawl, and climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. She is limited to performing simple routine tasks and can perform work with production expectations, but the work must not be at a fast pace such as an assembly line. She is further limited to work that requires only occasional changes in the work setting and can have occasional interaction with co-workers, supervisors and the public.

[Tr. 37.] The ALJ doubted some of plaintiff's statements concerning the intensity, persistence, and limiting effect of her symptoms, finding that her statements were not fully consistent with the evidence in the record. [Tr. 38.] The ALJ noted that plaintiff's back pain was conservatively treated with pain medication and steroid injections. [Tr. 38–39.] Treatment notes showed that plaintiff had normal heart rhythms, that her strength was usually rated five-out-of-five, and that she had intact sensations. [Tr. 39.] With respect to

5

plaintiff's degenerative disc disease, the ALJ again thought that plaintiff's statements of pain were inconsistent with the evidence: "[p]hysical examinations have noted tenderness of the lumbar spine, but have also reflected many normal findings. . . ." [Tr. 40.]  The ALJ concluded that physical examinations "have been generally within normal limits with occasional symptoms related to her back." [Tr. 41.]

In reviewing the medical opinions of state agency medical consultants for plaintiff's pain levels, the ALJ did not find the medical opinions of state agency medical consultants Judee Bland, M.D., and Paul Ross, D.O. persuasive. [Tr. 41.]  Neither consultant thought that plaintiff had "severe" physical impairments. [Tr. 89, 97, 107, 115.]  The ALJ disagreed, finding that plaintiff needed additional limitations and to be limited to work at less than the full range of light work. [Tr. 41.]

As for plaintiff's mental health, the ALJ found persuasive the opinions of the state agency medical consultants Steven Akeson, Psy.D., and James Morgan, Ph.D. [Tr. 41, 92, 118.]  The ALJ thought these opinions were "entirely consistent with and supported by the [medical evidence] or with claimant's reported activity level." [Tr. 41.]  Explaining in "narrative form," these doctors both concluded that plaintiff "is capable of adapting to changes [on the job], which are predictable and introduced gradually." [Tr. 92, 118.]  No additional explanation is provided that elucidates the precise meaning of what makes a change "predictable" or how to introduce changes "gradually."  The ALJ also reviewed the opinion of plaintiff's treating psychiatrist Robert McCool, M.D, finding that the opinion was not entirely consistent with other evidence documenting "generally stable and benign mental status findings." [Tr. 42.]

6

At Step Five, the ALJ found that the plaintiff could not perform past relevant work. The ALJ relied on vocational expert testimony to conclude that plaintiff could perform other work as cleaner or hand packer, jobs that exist in substantial numbers in the national economy. [Tr. 42–43.] Accordingly, the ALJ concluded that plaintiff was not disabled.

## IV.    Standard of Review

The Court must affirm the ALJ's decision if it is supported by substantial evidence on the whole record. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is less than a preponderance of the evidence but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the [Commissioner's] findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (*quoting Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987)) (alteration in original). The Court must also consider any evidence that fairly detracts from the ALJ's decision. *Id.* The Court must give the record a "searching inquiry" and balance the weight of the evidence in favor of the ALJ's decision against the weight of the evidence that detracts from the ALJ's decision. *Burress v. Apfel*, 141 F.3d 875, 878 (8th Cir. 1998). "[I]f there is substantial evidence on the record as a whole, [the Court] must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992); *see also Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (citing cases).

In reviewing whether the ALJ's decision was supported by substantial evidence, this Court does not substitute its own judgment for that of the ALJ: even if different conclusions could be drawn from the same evidence, and even if this Court may have reached a different outcome. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) (citing *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001)).

## V.   Discussion

Plaintiff raises three arguments on why the ALJ's RFC is not supported by substantial evidence: (1) the ALJ failed to include some limitations in the RFC that were recommended by medical opinions that the ALJ found wholly persuasive; (2) the RFC was not supported with medical evidence; and (3) the ALJ improperly discounted plaintiff's testimony. [Doc. 12.] Each argument is discussed below.

### a.   Evaluation of the Medical Opinions

Plaintiff first argues that the ALJ failed to incorporate the limitations noted by Dr. Akeson and Dr. Morgan that plaintiff should be limited to changes in the workplace that are "predictable and introduced gradually." [Doc. 12 at 5.] As plaintiff argues, remand is required because the ALJ failed to incorporate a limitation for work changes to be predictable and introduced gradually from the opinions that the ALJ found entirely

8

persuasive.  [Doc. 12 at 5] (citing SSR 96-8p, 1996 WL 374184, at *7 (Soc. Sec. Admin. July 2, 1996); *Gann v. Berryhill* 864 F.3d 947, 952–53 (8th Cir. 2017) (finding error when ALJ did not incorporate nor contradict medical opinions that included greater limitations on plaintiff's RFC)).  If plaintiff is correct—that the ALJ did wholly accept the medical opinions but then chose not to include their proposed limitations—then this case requires remand so that the ALJ may explain why he rejected parts of those opinions, as required by 20 C.F.R. § 404.1520c.  *See Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020) (finding error when ALJ did not comply with SSA regulations that require ALJ to explain any inconsistencies in medical opinions).

In view of the "predictable and gradual" change requirement, the ALJ's RFC limited plaintiff to only perform "routine tasks . . . but the work must not be at a fast pace such as an assembly line" and that plaintiff "is further limited to work that requires only occasional changes in the work setting."  [Tr. 37.]  Thus, the issue is whether the ALJ's limitation for "routine work with occasional changes" is equivalent to the opined limitation for "predictable and gradual changes."  Plaintiff insists that comparing the different wording— and what that wording entails for the RFC—is comparing apples to oranges.  The Commissioner responds that it is comparing apples to apples.  Seeing no practical difference between the RFC's wording and the medical opinions' wording—and plaintiff having failed to define any meaningful difference between the two—this Court finds that the ALJ properly incorporated the medical opinions' recommendations into the RFC. A limitation to "routine work with gradual changes" is essentially the same as a limitation for "predictable and gradual changes."

9

Plaintiff cites *Masden v. Saul*, a case where a district court found that an RFC limiting the plaintiff to "few, if any workplace changes" did not adequately incorporate a medical opinion limitation that any changes in the workplace be "predictable and gradual." [Doc 12 at 6–7] (discussing No. 4:20-CV-00267-MDH, 2021 WL 3172934, at *1–2 (W.D. Mo. July 27, 2021)).  That case is not persuasive.  In any event, the ALJ's wording here adequately incorporates the medical opinions.

### b.  The RFC and the Medical Evidence

Next, plaintiff argues that the ALJ did not support her RFC with medical evidence because the ALJ "rejected the only medical opinion of record and relied on her own inferences from the medical record."  [Doc. 12 at 7.]  Plaintiff also alleges that the ALJ improperly evaluated plaintiff's subjective statements concerning the intensity, persistence, and limiting effect of her symptoms because her symptoms are consistent with the medical evidence.  [Doc. 12 at 10].

### i.  The Medical Evidence Supporting the RFC

Though an RFC must be based on and supported by some medical evidence, there is no requirement that it be supported by a specific medical opinion.  *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).  Indeed, the ALJ benefitted plaintiff by not wholly adopting the opinions of Dr. Bland and Dr. Ross, as those opinions opined that plaintiff had *no* severe impairments and could perform a full range of light work.  [Tr. 89, 97, 107, 115.]  Instead, the ALJ thought that plaintiff's degenerative disc disease and obesity are

10

severe and required additional accommodations, such as limiting plaintiff to light work with postural limitations. [Tr. 41.]

"As is true in many disability cases, there is no doubt that the claimant is experiencing pain; the real issue is how severe that pain is." *Perkins v. Astrue*, 648 F.3d 892, 901 (8th Cir. 2011). The ALJ is not required to discuss every piece of evidence but can instead focus on the most relevant evidence. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). The ALJ recognized plaintiff had physical impairments such as back pain and obesity that were supported by examinations and medical imaging, but that this evidence did not support the degree of limitation alleged by plaintiff. [Tr. 38–39.] A May 2020 primary care appointment showed poor flexibility, but a negative straight leg raise test, normal gait, clear lungs, and a regular heart rate and rhythm. [Tr. 38–39, 410.] This same record showed no acute distress and no radiating pain. *Id.* She was prescribed medications and stretching exercises to treat her symptoms. *Id.* At a July 2020 primary care examination, plaintiff had moderate swelling in her lower back and some pain in her lumbar spine, but there was no pitting edema, and she was again negative on a straight leg raise test. [Tr. 39, 447.] During that exam, she denied taking her pain medication because she felt tired. *Id.* She was prescribed medication, told to eat a low sodium diet, and to decrease her alcohol consumption. *Id.* She was scheduled to receive an MRI, which she did later that same month. [Tr. 447–49.] The MRI revealed that she had multi-level degenerative changes, including mild to moderate bilateral neural foraminal narrowing, an L5 pars defect, bilateral sacroiliitis, and mild spinal canal stenosis at L4-L5. [Tr. 39, 448–49.]

11

Based on this MRI, the ALJ credited some of plaintiff's testimony on her lower back pain. [Tr. 39.]

Plaintiff showed clear lungs and a regular heart rate and rhythm during primary care visits in July, September, and November 2020 [Tr. 39, 445–46, 584.]  At pain management appointments through July, September, October, and December, plaintiff would display full five-out-of-five strength in upper and lower extremities and intact sensation in all extremities.  [Tr. 39, 496–97, 515–16, 558, 600–01.]  She was treated with pain medication and steroid injections.  [Tr. 39.]  In total, the ALJ did not doubt that plaintiff experienced lower back pain and other difficulties because of her obesity.  The ALJ provided additional limitations below a full range of light work, including limitations to only occasionally stoop, crouch, crawl, and climb ramps and stairs, and that plaintiff could never climb ladders, ropes, or scaffolds.  [Tr. 37.]  Plaintiff is limited to performing simple routine tasks and can perform work with production expectations, but the work must not be at a fast pace such as an assembly line.  *Id.*  Thus, the ALJ supported the RFC with some medical evidence that addresses plaintiff's ability to function in the workplace.  *See Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001).

Plaintiff next criticizes the ALJ for relying on "normal" findings in crafting an RFC that allows for light work.  [Doc. 12 at 9] (citing [Tr. 40] (discussing plaintiff's mental health capacity and physical findings)).  It is unclear whether plaintiff criticizes the ALJ's reliance on "normal findings" as to plaintiff's mental health, physical health, or both. To be sure, the Eighth Circuit cautions against ALJs relying on their own inferences on what "normal" notations mean on medical records, and that ALJs should instead rely on the

expertise of medical professionals to interpret those results. *See Combs v. Berryhill*, 878 F.3d 642, 647 (8th Cir. 2017).

As to the portion of the ALJ's opinion dealing with "normal" findings for plaintiff's mental health, the ALJ relied on plaintiff's mental status examinations. These included notations that plaintiff was found to be "alert and oriented to person, place, and time, to be cooperative, to have a neat and clean appearance, unremarkable thought content, to have normal behavior, normal memory, normal speech, fair insight, and to deny suicidal or homicidal ideations, and hallucinations." [Tr. 40] [citing to records]. The ALJ was not relying on her own inferences on what "normal" meant, but instead cited to the medical professionals' records.

Regarding the ALJ's discussion of "normal findings" as to plaintiff's physical capacity, the ALJ considered the consulting medical opinions of Dr. Bland and Dr. Ross, [Tr. 40–41, 93, 101, 111, 119], which determined that plaintiff was not disabled and that she was capable of a full range of light work. *Id.* Though the ALJ did not fully agree with Dr. Bland's and Dr. Ross's opinions [Tr. 41], the ALJ necessarily agreed that plaintiff retained some residual functional capacity and could perform at least a limited range of light work. The ALJ did not rely on her own inferences, nor was she "playing doctor." Rather, based on all of the available evidence—both medical opinion evidence and medical record evidence—the ALJ concluded that plaintiff could perform a range of light work with additional limitations. Furthermore, plaintiff has not argued that those medical opinions were based on an incomplete record, nor has plaintiff indicated any reason why they should be completely disregarded. Therefore, the ALJ fulfilled her duty to consider

"at least some supporting evidence from a [medical] professional." *Hutsell*, 259 F.3d at 712 (quoting *Laur v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) (alteration in original)).

In addition to considering the medical evidence in crafting the RFC, the ALJ also properly considered other evidence and plaintiff's own testimony. Plaintiff testified that she suffered from difficulty concentrating and paying attention due to her mental health symptoms—that she could not even pay attention to a simple task for longer than two hours. [Tr. 64–65.] Plaintiff testified that her lower back pain caused her to lie down two or three times per day for 30 to 45 minutes each time. [Tr. 68.]. She also testified that she could only perform tasks at approximately 40–50 percent speed due to her pain. [Tr. at 69.] Also, the ALJ noted that plaintiff "says she can only stand for about five minutes before she must adjust position due to pain and that she can only sit for about thirty minutes before she must adjust her position. She also alleges she experiences paranoia, crying spells, panic attacks, anxiety, and depression. According to the claimant, she has difficulty with her memory, concentration, ability to complete tasks, understand, and interact with others." [Tr. 38.] The ALJ addressed plaintiff's reported difficulty with sitting, standing, and completing daily tasks. Through this review, the ALJ found that plaintiff's medically determinable impairments could cause some of the alleged symptoms, but that plaintiff's testimony as to the severity of her symptoms was not entirely consistent with the evidence in the record. [Tr. 38.] Those inconsistencies are discussed below.

ii.  Plaintiff's Daily Activities and Work History

In evaluating plaintiff's testimony, the ALJ explained what symptoms she found to be inconsistent with the record and how her evaluation of those symptoms led to her conclusions.  The ALJ also properly considered the factors enumerated by *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) and SSR 16-3p, 2016 WL 1119029, at *2 (Soc. Sec. Admin. Mar. 16, 2016) (listing factors).

First, the ALJ thought that plaintiff's testimony was inconsistent with her impairments because plaintiff's daily activities and past work showed some residual functional capacity.  The ALJ summarized that plaintiff reported that she is able to "attend to her personal care needs, prepare meals, drive a car, shop for groceries, appropriately handle her finances, use a cell phone, cook, clean, and work part time as a Nursing Assistant."  [Tr. 41.]  Plaintiff is also able to attend medical appoints entirely on her own. [Tr. 41] (citing exhibits B1F–B11F).  Though the ability to do daily household chores is not determinative of whether a plaintiff can sustain full-time competitive work, *Baumgarten v. Chater*, 75 F.3d 366, 369 (8th Cir. 1996), plaintiff's reported activities— shopping, caring for herself, working part time—undercuts specific points of her testimony: for example, that she can only stand for five minutes at a time.  [Tr. 68.]

Also, the ALJ noted that plaintiff worked part time as a nurse aid during the claimed period of disability.  Though this work did not qualify as substantial gainful activity [Tr. 34–35], it does indicate an ability to perform some work and it contradicts her testimony on her debilitating symptoms.  Despite alleging that her symptoms were totally debilitating, plaintiff was able to perform some work during the relevant period.  [Tr. 35–36, 38, 41,

15

274–76.]  In fact, plaintiff reported working up to 15 hours per week; spending 7.5 hours daily standing, walking, and handling objects; and lifting over 100 pounds.  [Tr. 275.] "Working generally demonstrates an ability to perform a substantial gainful activity." *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005).  The record shows that the ALJ considered the nature and frequency of the work.  Plaintiff's prior work gave the ALJ both a reason to question her testimony and to also find her capable of performing a limited range of light work.  *See id.* at 792–93 (finding that plaintiff's impairments were not disabling because plaintiff had worked as a nurse's aide despite her claimed debilitating symptoms and that she could work 15 hours per week as a kitchen aid).

### iii.   Plaintiff's Conservative Treatment

Second, the ALJ noted plaintiff's conservative treatment of pain medications and steroid shot injections in dealing with her back pain.  An ALJ may consider a plaintiff's conservative treatment in assessing the RFC and may use such as evidence that the plaintiff retains some functional capacity.  *See Milam v. Colvin*, 974 F.3d 978, 985 (8th Cir. 2015) (affirming ALJ's evaluation of plaintiff's conservative treatment); *see also* See 20 C.F.R. §§ 404.1529(c)(3)(iv)–(v), 416.929(c)(3)(iv)–(v) (allowing for evaluation of plaintiff's symptoms, including pain).  In May 2020, in treatment for her back pain, plaintiff was prescribed stretching exercises, pain medication, and muscle relaxers.  [Tr. 39, 410].  A treatment note indicated Plaintiff was not taking her pain medication because it made her feel tired.  [Tr. 39, 447.]  From July 2020 through November 2020, Plaintiff was treated with SI injections, medial branch block injections, and epidural steroid injections [Tr. 39,

507, 517–18, 530, 535, 538, 548–49, 556, 560, 574, 599, 603-04.]  In December 2020, she was prescribed more pain medication.  [Tr. 39, 604].  The ALJ noted that Plaintiff did not require the use of any assistive device for ambulation, and none of her providers had recommended surgical repair during this period.  [Tr. 40–41.]  The ALJ additionally found that Plaintiff's mental impairments were treated conservatively with medication and therapy, and Plaintiff required no inpatient hospitalizations for mental health problems. [Tr. 40–41.]

Plaintiff also claims that a May 26, 2021 surgical evaluation from Stacy Smith, N.P., rebuts the ALJ's argument that conservative treatment was working.  [Doc. 12 at 12; Tr. 12].  This evaluation was presented not to the ALJ, but only to the Appeals Council, which declined to review the record because it was dated outside the relevant period ending on March 27, 2021.   Nonetheless, argues plaintiff, the Appeals Council should have considered whether this evidence was new and material to the case.  The Commissioner does not address this argument.  Instead, the Commissioner urges this Court to find that the evidence was not material, nor does it have a reasonable probability of changing the outcome.  [Doc. 13 at 13–14.]

Medical opinion evidence should not be immediately rejected simply because it was issued after the date of an ALJ's decision.  *Williams*, 905 F.2d at 216 ("The timing of the examination is not dispositive of whether evidence is material.").  Whether evidence is actually new, material, and related to the adjudicated period is a question of law the court reviews *de novo*. *Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995).  "Where, as here, the Appeals Council considers new evidence but denies review, we must determine whether

17

the ALJ's decision was supported by substantial evidence on the record as a whole, including the new evidence." *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007) (deciding that evidence presented to the Appeals Council was still part of the administrative record on review even though the Appeals Council determined that the evidence was outside the relevant period).

At the outset, the Appeals Council may have been correct to reject plaintiff's surgical evaluation as outside the relevant time period, namely because the evaluation was prompted by plaintiff's *worsening* symptoms. The evaluation looked at old medical records, but the evaluation was for treating new developments in plaintiff's reported pain levels. In that case, plaintiff could not introduce the new evidence because it is outside the relevant period, as noted by the Appeals Council. [Tr. 2.]

Even if this Court agrees with plaintiff that the May 2021 surgical evaluation relates to the relevant time period, plaintiff has failed to demonstrate that this evidence is material, that it would have changed the ALJ's decision, or that it undermines the ALJ's RFC. Surgical evaluation would not make a difference to the ALJ's decision because plaintiff is ineligible for surgery due to her high body mass index. [Tr. 15.] Thus, there can be no escalation of treatment because plaintiff is limited to conservative treatment. Indeed, Nurse Smith recommended even more conservative treatment—namely, diet and exercise plans to help plaintiff lose weight, including aquatic therapy. *Id.* Plaintiff was satisfied with this plan. *Id.* Until that time, plaintiff is confined to only conservative treatment. The fact that plaintiff's treating physician recommended light exercise and plaintiff *agreed* with the plan to do light exercise as part of a weight-loss regimen further supports a finding that plaintiff

18

can perform a limited range of light work.  *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (citing *Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003) ("A lack of functional restrictions on the claimant's activities is inconsistent with a disability claim where, as here, the claimant's treating physicians *are recommending increased physical exercise*) (emphasis added)).  If anything, this additional evidence supports, rather than undermines, the ALJ's RFC.  *See id.* (plaintiff's claim of disability is undermined by "the fact that [plaintiff's] physicians on numerous occasions *encouraged her to engage in physical exercise*") (emphasis in original).

### iv.  Plaintiff's Other Subjective Symptoms

Plaintiff argues that the ALJ's failure to specifically address two of her other subjective symptoms—that she needs to lie down 30 to 45 minutes three times per day and that she works 50% slower due to back pain—means that the ALJ did not comply with Social Security regulations and that this requires remand.  [Doc. 12 at 10–11] (citing SSR 16-3p, 2016 WL 1119029, at *2 (Soc. Sec. Admin. Mar. 16, 2016)).  The ALJ recognized the requirements of SSR 16-3p in her decision.  [Tr. 37–38.]  But crafting the RFC, an ALJ is not required to explicitly reference every complained of symptom, especially when other evidence suggests the symptom is not disabling or is not supported.  *See Hensley v. Colvin*, 829 F.3d 926, 933 (8th Cir. 2016) (finding that ALJ's non-discussion of one of plaintiff's symptoms was justified when plaintiff presented no evidence that condition was disabling).  "[A]n ALJ's failure to cite specific evidence does not indicate that it was not considered." *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000).

19

The ALJ recognized plaintiff's testimony such as her difficulty with lifting, squatting, bending, standing, reaching, walking, and climbing stairs.  [Tr. 38.]  She also recognized plaintiff's testimony that she needs to take frequent breaks and has difficult completing household chores.  *Id.*  This evaluation necessarily addresses all of plaintiff's testimony regarding her debilitating symptoms.  The ALJ recognized all of plaintiff's testimony and adequately explained where she thought plaintiff's symptoms were inconsistent with the evidence in the record.  The ALJ's lack of specific discussion as to two symptoms does not mean they were not considered—instead, these symptoms were addressed in the ALJ's general discussion of plaintiff's difficulties.  The ALJ is in a better position to evaluate the credibility of plaintiff's testimony.  "Accordingly, the ALJ provided valid reasons for discounting [plaintiff's] subjective complaints and . . . the ALJ's less-than-fully credible determination is supported by substantial evidence."  *Chaney v. Colvin*, 812 F.3d 672, 677 (8th Cir. 2016).

### c.  Plaintiff's Interpretation of the Medical Evidence

Rather than identify the additional information that is needed to supplement the record, plaintiff recites the results of medical examinations, lists her impairments, cites to her own testimony as supporting her symptoms, and then argues that this means the RFC was not supported by substantial evidence.  [Doc. 12 at 13–15; Doc. 14 at 3–5.]  Throughout her arguments, plaintiff cites to various medical records and gives her own interpretation of the evidence, but she fails to show how the ALJ's interpretation is so unreasonable as to be unsupported by substantial evidence.  Just because different

conclusions may be drawn from the same evidence does not mean that the ALJ's decision was unsupported by substantial evidence.  *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).   Even though plaintiff provides a differing interpretation of the medical evidence—and even a plausible interpretation of the medical evidence—the ALJ's reasonable interpretation of the evidence is the one this Court must accept.  *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005).  For all these reasons, the ALJ's opinion is supported with substantial evidence and is affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is AFFIRMED and plaintiff's complaint [Doc. 1] is **DISMISSED** with prejudice.  A separate judgment will accompany this Order.

Dated this 21st day of October, 2022.

STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE